89 N.J. Super. 482 (1965)
215 A.2d 560
ACE STONE, INC., A CORPORATION, PLAINTIFF-APPELLANT,
v.
THE TOWNSHIP OF WAYNE, IN THE COUNTY OF PASSAIC, STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 25, 1965.
Decided December 20, 1965.
Before Judges CONFORD, KILKENNY and LEONARD.
*483 Mr. Murray A. Laiks argued the cause for appellant (Messrs. Heller & Laiks, attorneys; Mr. Eugene L. Donallo, of counsel).
Mr. Irving I. Rubin argued the cause for respondent.
The opinion of the court was delivered by KILKENNY, J.A.D.
The Superior Court, Law Division, granted summary judgment in favor of defendant township in a suit by plaintiff contractor to recover damages sustained by it as the result of delays in the performance of its contract to install municipal sewer pipe lines. The township was held not liable, as a matter of law, because of provisions in the contract exempting it from any and all claims for damages due to delays in performance, including delays in completion caused "by any act or neglect of the Owner [township] or the Engineer * * * or by changes ordered in the work."
Plaintiff appeals from the summary judgment. It contends that the exemption (from damages due to delays) provisions in the contract were not intended to and do not absolve the township from liability for delays due to the township's failure to have the work site fully available when plaintiff was directed by the township engineer to proceed with the job.
Plaintiff's position is that in submitting its bid on July 18, 1961 it contemplated and had a right to assume, and was assured by the township engineer after bid submitted, that the work site would be completely available when it was directed to proceed, and there was nothing in the specifications or contract form indicating any possible unavailability. The specifications provided for a ten days' notice to proceed and required performance within 80 days after notice to proceed with the work had been given. The gist of plaintiff's claim for damages is that, after plaintiff as successful bidder entered into contract with the township on August 1, 1961 and was directed by the township engineer on August 4, 1961 to commence work on August 14, 1961, it found upon moving its equipment, materials and work crews on the job that the *484 work site was not fully available. Some of the easements for the pipe line right-of-way had not yet been procured. As a result, plaintiff was allegedly not able to proceed with the operation in an orderly, continuous and economic fashion; work stoppages ensued for want of the easements needed to proceed uninterruptedly; the job wore on through the cold season with increased costs due to weather conditions, and the contract was not fully performed until June 15, 1962. Thus, a job undertaken and contracted to be completed within 80 days from August 14, 1961, required ten months for performance at greatly increased costs, to the damage of plaintiff.
During the progress of the work, plaintiff protested the additional expense to which it was being put due to the delays. It was directed to proceed and was told that its claim "will be reviewed upon completion of the work under the contract." Thereafter, its claim for additional compensation because of the delays was denied. Plaintiff's suit in the Law Division followed, with the result first noted above.
For the purpose of the motion for summary judgment only, and without conceding the ultimate truth of the facts asserted, defendant did not dispute in the trial court and does not dispute here that (1) plaintiff was directed by the township engineer to proceed at a time when the work site was not fully available because the township did not have at the inception of the job all the required easements for the pipe line right-of-way; (2) there were delays in performance for want of all the easements; (3) the job scheduled for completion within 80 days was not finished until ten months after commencement; and (4) plaintiff sustained damages by reason of the delays. Defendant's position is that, even assuming those facts to be true, the board provisions of the contract exempting the township from all claims for damages due to delays justify the award of summary judgment in its favor.
With reference to the subject of "delays," the contract provided in article III, paragraph 12:
*485 "EXTENSION OF TIME: The Owner shall have the right to defer the beginning or to suspend the whole or any part of the work herein contracted to be done whenever, in the opinion of the Engineer, it may be necessary or expedient for the owner so to do. And if the Contract [sic] be delayed in the completion of the work by any act of neglect of the Owner or the Engineer, or if [sic] any employee of his or of any other contractor employed by the Owner, or by changes ordered in the work, or by strikes, lockouts, fire, unusual delay by common carriers, unavoidable casualties, or any cause beyond the Contractor's control or by any cause which the Engineer shall decide to justify the delay, then for all such delays and suspensions the Contractor shall be allowed one day additional to the time herein stated for each and every day of such delay so caused in the completion of the work, the same to be ascertained by the Engineer, and a similar allowance of extra time will be made for such other delays as the Engineer may find to have been caused by the Owner. No such extension shall be made for any one or more of such delays unless within ten days after the beginning of such delay a written request for additional time shall be filed with the Engineer. No claim for damages or any claim other than for an extension of time as herein provided shall be made or asserted against the Owner by reason of the delays hereinbefore mentioned." (Emphasis added)
Plaintiff argues that availability of the work site is so fundamental an implied condition that, upon its being notified to proceed, it had a right to assume, in the absence of specification otherwise, that the entire work site was then available and the foregoing provision as to delays was not intended to cover delays occasioned by the township's failure to have the entire work site available for the effective and efficient performance of the contract.
Article II, paragraph 3, of the contract provides in part:
"The Contractor covenants and agrees that, anything in this contract or in the Contract documents attached hereto to the contrary notwithstanding, or regardless of any matter, thing, contingency or condition unforeseen or otherwise, present or future, the Contractor shall not be entitled to receive any additional or further sums of money other than the aforesaid amount [the contract price] * * *."
Defendant maintains that this provision also bars plaintiff's cause of action.
The issue before us is not entirely free from doubt as to its proper resolution. Supportive of plaintiff's position is the *486 holding in Sheehan v. City of Pittsburg, 213 Pa. 133, 62 A. 642 (Sup. Ct. 1905). In that case, there was a similar exculpatory clause and the contractor was delayed by reason of the fact that the city had not obtained a complete right-of-way for the location upon which the contractor was to build a street. The Pennsylvania Supreme Court said it was clear that the "delay from the city's failure to obtain complete right-of-way was not in the class of difficulties and delays which were in the minds of the parties, for the agreement itself was based on the assumption by both parties that the complete right-of-way had been secured so that the work could be begun at any point and proceed without interruption." (Italics ours)
In the instant case it cannot be said both parties were laboring under an assumption, when the contract was executed, that the right-of-way easements "had been secured." The township knew that all easements had not been secured. Plaintiff may have assumed, when it signed the contract and was thereafter told to proceed, that the right-of-way was completely available. However, upon the basis of the affidavit of its own president, it had, at most, only a verbal assurance from the township engineer after bidding and before contract that "any easements which the Township required would have been completed and acquired before we received the notice to proceed." (Italics ours)
As to plaintiff's contention that delay in obtaining the work site was not a contemplated delay, we held in Gherardi v. Trenton Board of Education, 53 N.J. Super. 349 (App. Div. 1958), that a provision in a public construction contract that, apart from an extension of time for delays, no payment of any kind would be made to the contractor as compensation for damages on account of delay from any cause in the progress of the work, whether such delay was voidable or unavoidable, was a complete bar to the contractor's action for damages caused by delays, as against the contention that the quoted provision was required to be construed to mean "contemplated or unavoidable delays." In brief, where the parties have *487 agreed that an extension of time is the contractor's exclusive remedy in the case of a delay from any cause whatsoever, and that the contractor will not be entitled to any extra compensation for delays in completion of the job, even when caused "by any act or neglect of the Owner or Engineer * * * or by changes ordered in the work," there is no valid reason why that provision in the contract should not be binding, especially where there is no charge of bad faith, fraud, or wrongful interference with the contractor's performance.
There is no allegation in the complaint, pretrial order, or in any affidavit on plaintiff's behalf that the representation as to the future availability of the work site was false when made, or that there was any bad faith on defendant's part. Plaintiff does not charge fraud or tortious conduct on the part of defendant or its representatives. The gravamen of the action is an alleged breach of contract. Plaintiff knew when it first went on the job that all easements had not been obtained and that the contemplated beginning point would need to be altered for want of an easement at that point. If procurement of the entire right-of-way were an implied condition to performance, plaintiff might have elected not to proceed until all easements had been procured. It did not do so. Instead, it chose to proceed with the work under protest as to the lack of availability of the entire work site, taking its chances that the promised review of its claims for extra compensation would produce favorable results. It received no assurances from anyone that it would be paid extra compensation.
As we said in A. Kaplen & Son v. Housing Authority of City of Passaic, 42 N.J. Super. 230 (App. Div. 1956):
"[S]tipulations like the questioned proviso are obviously conceived in the public interest in protecting public agencies contracting for large improvements on the basis of fixed appropriations or loan commitments against vexatious litigation, based on claims, real or fancied, that the agency has been responsible for unreasonable delays * * * exculpatory clauses of the kind here involved have long been in vogue and have been generally sustained and enforced by the courts." (at p. 233) *488 We recognize that the Kaplen case is factually distinguishable from the instant case, because there, unlike in the present situation, the very contingency of delay in procurement of the site on which the work was to be done was mentioned in the contract as one of the potential causes of delay, in respect of which the contractor would be allowed additional time to complete the contract equivalent to such delay, but no damages.
However, the exculpatory clauses in the contract before us are clearly broad enough and sufficiently explicit to exclude contractual liability for the claim here asserted, even without a specific recital of delays occasioned in procuring the complete right-of-way. Literally, the delays involved herein come within the language of the contract provisions quoted above.
Accordingly, we conclude that the summary judgment entered in favor of defendant should be and is hereby affirmed.