134 N.J. Super. 198 (1975)
338 A.2d 875
FRANKLIN CONTRACTING CO., A CORPORATION OF NEW JERSEY, PLAINTIFF,
v.
STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided May 1, 1975.
*199 Mr. Adrian M. Foley, Jr. for plaintiff (Messrs. Mc Elroy, Connell, Foley & Geiser, attorneys).
*200 Mr. Nicholas F. Monteforte for defendant (Mr. William F. Hyland, Attorney General, attorney).
JOHNSON, J.S.C.
This action was instituted by the Franklin Contracting Co. against the State of New Jersey for the alleged breach of a contract dated July 10, 1969, under the terms of which plaintiff agreed to perform certain construction work on a road known as Route 21, Section 4C, in the City of Passaic. It is undisputed that, among other things, plaintiff was to erect a viaduct and relocate an existing sewer line owned by the City of Passaic, all in accordance with the contract and accompanying specifications. It is further undisputed that defendant was to obtain all necessary title to or easements over the required lands.
Plaintiff contends defendant failed to obtain the same within the time contemplated by the parties, which failure caused plaintiff to be damaged and gives rise to this suit.
The action involves three claims for extra costs and losses incurred by the plaintiff in order to complete its contract, viz: (a) those suffered by virtue of an injunction issued by the Superior Court of New Jersey at the behest of a third party; (b) the costs ordered by the Superior Court to be paid to the City of Passaic for temporary pumping following an apparent rupture of that city's sewer line, and (c) the overhead and ordinary profit it lost by virtue of the failure of defendant to obtain access for plaintiff to go upon lands needed for plaintiff to perform its work.
Defendant denies liability and contends the language of the contract and the standard specifications incorporated by reference therein specifically preclude any and all recovery by plaintiff.
The matter came on for trial before the court sitting without a jury.

I
During the fall of 1970 the plaintiff was engaged in certain sub-surface work required for the construction of a viaduct referred to herein as the Weaselbrook Viaduct. It was using *201 pile-driving equipment to install sheeting in order to build cofferdams near property owned by Uniroyal Inc. and leased by United Wool Piece Dye and Finishing Company. These companies instituted a suit contending that the building of the viaduct and the method being employed by plaintiff to do so was causing immediate and irreparable harm to its property, and they succeeded in obtaining a temporary injunction from the Superior Court on November 1, 1970. This injunction enjoined plaintiff from proceeding with said project until the injunction was terminated on February 10, 1971 for reasons unknown to this court and immaterial to the issues here to be resolved. Plaintiff seeks to be compensated by defendant for its alleged losses during this 103-day court-imposed work stoppage, contending it was simply doing that which was required by the contract and as prescribed by the specifications. Plaintiff admits that after the injunction was lifted it returned to the site and completed the work in the same manner as it had been doing previously and in accordance with the original plans and specifications.
The court fails to see on what basis plaintiff could recover from this defendant. It is axiomatic that before a defendant may be required to pay damages it must be adjudicated that there is some fault on its part. None has been shown. It is admitted that plaintiff did what the contract required. If the work was being done in an improper manner, the contract specifically makes plaintiff liable to save defendant harmless. See article 1.6.2 of the standard specifications. The only reason for the stoppage was the action of the court over whom defendant had no control. The injunction was obtained by a third party. Defendant did not consent to the injunction nor could it have secured a dissolution of it. Peckham v. Industrial Securities Co., 1 W.W. Harr. 200, 31 Del. 200, 113 A. 799 (Super. 1921).

II
It has been conceded that when the contract between the parties hereto had been let defendant was under the impression *202 that it had a right to go upon the lands of United Wool where there was located a manhole in a certain sanitary sewer owned by the City of Passaic. The sewer ran under the Passaic River as it was then located and a 600-foot section of it was to be relocated by plaintiff pursuant to its contract with defendant. The pipe as located below the aforementioned manhole was to be the highest elevation in the new 600-foot section. The engineers for both parties testified that it was imperative that access be obtained to the high point in order to properly determine the pitch of the sewer line. Without such access the contractor could not proceed to perform its work as contemplated by the parties.
Sometime after the contract was awarded and plaintiff commenced its work it was discovered that a certain agreement between the landowner and the City of Passaic did not give access to the State. Even without the legal right to enter upon the lands of United Wool, plaintiff attempted to do so alone and in conjunction with representatives of the State, but access was denied by the landowner.
Since plaintiff was unable to continue its work, it appealed to defendant to ascertain another way of accomplishing that which the new sewer line was to accomplish. Following this appeal defendant on June 23, 1971 directed plaintiff not to construct the sanitary sewer until further notice, and in its letter of that date to plaintiff stated:
As of this date you have fill to be placed before you are ready to construct this line and furthermore there is sufficient work to be done at other locations to keep your equipment and men occupied.
On January 20, 1972 a memo was sent by defendant to plaintiff authorizing plaintiff to proceed with the construction of the 16" cast iron sewer line to Ramp L 27 + 91 - 47.5' Rt., being the location of the manhole on the United Wool property.
During the interim between June 23, 1971 and January 20, 1972 plaintiff constructed a rock working platform near the existing sanitary sewer, and on January 13, 1972 it was *203 discovered by the Passaic Valley Sewerage Commission that several million gallons of river water was entering its treatment plant. Tests were conducted on January 24, 1972 and it was discovered that a rupture of the line in question had taken place, evidence of the same being observed at or near the said rock working platform.
Immediately thereafter the City of Passaic instituted an action in the Chancery Division of the Superior Court. Judge Kole ordered that plaintiff herein pay the City of Passaic the cost of pumping the sewage through a temporary connection to prevent the continued pollution of the Passaic River. Judge Kole did not determine the merits of the controversy nor did he determine who if anyone was at fault. Plaintiff has complied with the terms of the judgment and now seeks to recover the cost of the pumping, contending that if it did in fact rupture the sewer, it was the proximate result of this defendant directing plaintiff to proceed with its wet excavation out of sequence. Plaintiff further contends the sewer would not have ruptured if defendant had obtained the easement required when it should have, since plaintiff would have constructed the new sewer line, and the old one which ruptured would have been abandoned and removed.
It is true that Plaintiff was specifically directed to proceed with the construction of the new sewer, and it was called to plaintiff's attention that it had fill to be placed, but nowhere do I find any direction to dump rock at or near the location of the pipe. Plaintiff chose to proceed for its own benefit in spite of its right to wait until the required permission to enter upon the lands of United Wool was obtained.
This court makes no determination as to the cause of the sewer line rupture. If it was the result of plaintiff's actions, then plaintiff was negligent in not protecting the utility, as it was required to do by the contract with defendant. Art. 1.6.11. If it was not the result of the actions of plaintiff, then it would be pure speculation on the part of this court to determine the cause of the rupture from the *204 evidence before it or to hold that it would never have occurred if the easement had been obtained, since the new sewer line would have been completed and in use in the place of the old line. In the opinion of this court it would simply be drawing an inference upon an inference.
Plaintiff is not entitled to recover the cost of the pumping from this defendant on the evidence adduced.

III
At the time the parties entered into the contract in question it was assumed by them that defendant had the right to enter upon the lands of United Wool as a derivative right granted by the property owner to the City of Passaic in an easement agreement permitting the city to service the sewer line which was to be relocated by plaintiff pursuant to its contract with defendant. Defendant had so assured plaintiff that this was so.
Sometime in April 1971 plaintiff attempted to gain access to the aforementioned manhole and was informed by the representatives of United Wool that they would not make the site available to plaintiff, and in fact, forbade any entrance upon its property. Access to the manhole was imperative since it was essential to have the exact elevation of the pipe to lay at a proper pitch some 400+ feet of the sewer line leading to said manhole. The information was transmitted to defendant and both parties jointly attempted to persuade the property owner to permit the required access, but to no avail.
An examination by defendant of the agreement between the City of Passaic and the property owner indicated that defendant had no right of access as the parties hereto had presumed.
In October 1971 defendant filed a declaration of taking and instituted an eminent domain action against the property owner, but it was not until September 11, 1972 that *205 legal access was obtained and plaintiff was permitted to proceed with the contract.
Plaintiff seeks to recover its stipulated damages of $53,201.61 for the delay it allegedly suffered as the result of the failure of defendant to obtain and make available to plaintiff access over the lands required.
Defendant denies liability, contending that the "no damage" clauses in the contract bar any such recovery.
The following articles of the Standard Specifications for Road and Bridge Construction (1961) are incorporated by reference in the present contract:

1.2.1 Invitation to Bid.
In accordance with the Advertisement, proposals will be received for the performance of the Project, the designation of which is stated in the Advertisement. Bids are requested on the items stated in the form of proposal for the Project. The prices bid shall cover all costs of any nature, incident to and growing out of the work. In explanation but not in limitation thereof, these costs shall include the cost of all work, labor, material, equipment, transportation and all else necessary to perform and complete the Project, in the manner and within the time required, all incidental expenses in connction therewith, all costs on account of loss by damage or destruction of the Project, and any additional expenses, for unforeseen difficulties encountered, for settlement of damages, and for replacement of defective work and materials. The Bidder shall not attach conditions, limitations or provisos to his Proposal. The attention of bidders is directed to the provisions of Art. 1.2.7, Submitting Proposal, with particular reference to the documents and statements o be submitted with the Proposal, and to the provisions of Art. 1.2.9, Causes for Rejection.
The Bidder warrants that, before submitting his Proposal, he became familiar with the Plans, Specifications and other documents that will form parts of the Contract, investigated in detail the site of the Project and the available means of access, and made such examination thereof as necessary to satisfy himself in regard to the character and amount of work involved. He also warrants that he can secure the necessary labor and equipment, and that the materials he proposes to use will conform to the requirements therefor and can be obtained by him in the quantities and at the time required. The cost of providing access to the Project will not be paid for under any specific scheduled item but shall be included in the prices bid for the various items scheduled in the Proposal.

*206 1.2.11 Familiarity with Work.
It is the obligation of the Bidder to ascertain for himself all the facts concerning conditions to be found at the location of the Project including all physical characteristics above, on and below the surface of the ground, to fully examine the Plans and read the Specifications, to consider fully these and all other matters which can in any way affect the work under the Contract and to make the necessary investigations relating thereto, and he agrees to this obligation in the signing of the Contract. The State assumes no responsibility whatsoever with respect to ascertaining for the Contractor such facts concerning physical characteristics at the site of the Project. The Contractor agrees that he will make no claim for additional payment or extension of time for completion of the work or any other concession because of any misinterpretation or misunderstanding of the Contract, on his part, or of any failure to fully acquaint himself with all conditions relating to the work.
Before submitting his Proposal, the Bidder shall ascertain from the Director, Division of Right of Way, Acquisition and Titles, the status of right-of-way acquisition, of the availability and vacation of buildings which are to be removed or demolished by the Contractor, and of the vacation and removal or demolition of buildings on the site of the Project by other parties, and he shall ascertain the provisions of agreements between the State and property owners that may relate to his bid or to the work to be performed. The Contractor shall also confer with the said Director on the above mentioned matters immediately after award of the Contract and at such other times thereafter as may be necessary or advisable. The Contractor shall be governed by the provisions of the above mentioned right of way agreements.
The above article 1.2.11 has been supplemented as follows:

1.2.11 Familiarity with Work.
The following is added after the first paragraph of this article of the standard specifications:
The plans for the project show the location, outline and types of construction of the buildings to be demolished and whether they have cellars. In addition, the plans also show the location of the fuel storage tank farm system to be demolished under this item of work. It will be the responsibility of each bidder to confirm the information such as the type of building to be demolished and to ascertain the extent of the piping and appurtenances of the fuel storage tank farm. The contractor shall be required to make such investigations and determinations as may be necessary to secure all information he may consider pertinent to his bidding of the various demolition items, regardless of whether such information is or is not shown on the plans or included in these specifications. Bids shall be based on the bidder's own findings.
*207 The last paragraph of this article of the standard specifications is amended as follows:
All reference to director, Division of Right of Way Acquisition and Titles is changed to read as follows:
 Mr. P. Bosetti, District Supervisor
 Division of Right of Way Acquisition and Titles
 Department of Transportation
 Sweetland Avenue and Bloy Street
 Hillside, New Jersey
 Telephone: XXX-XXX-XXXX
All reference to "the removal of buildings by the contractor" is deleted.
The following is added to this article of the Standard Specifications:
The contractor shall make no claims for additional compensation on account of delays or necessary alterations in the procedure of his work that may be caused by delays in the vacating or removal of buildings by others and/or the acquisition of right-of-way.
While "no damage" clauses have long been used in contracts of the kind in question and generally sustained and enforced by the courts, their interpretation by the courts of this State have a somewhat limited history.
In A. Kaplan & Son, Ltd. v. Passaic Housing Authority, 42 N.J. Super. 230, 234 (App. Div. 1956), the court stated that "we are aware of no reason in logic or sound policy why such a contract stipulation as was here voluntarily entered into between the parties should not be held binding against the contractor."
The court, in discussing the plaintiff's contention that it was entitled to recover damages for a delay in site delivery, pointed out that "any construction of the agreement which would give it the damages it seeks here would, in effect, put it unfairly and discriminatorily, and therefore illegally, in a better position than that which it voluntarily chose to enter into, and better, also, than that which all public bidders, actual and potential, for the contract awarded to plaintiff, presumably weighed and analyzed before submitting their bids."
This same reasoning was employed in affirming the trial court's action in granting a motion for summary judgment *208 against plaintiff in Gherardi v. Trenton Board of Education, 53 N.J. Super. 349 (App. Div. 1958). Plaintiff had contended that the exculpatory clause excused defendant from damages only in the case of reasonable delay. In rejecting this argument the court cited Psaty & Fuhrman, Inc. v. Housing Authority of City of Providence, 76 R.I. 87, 68 A.2d 32, 10 A.L.R.2d 789 (Sup. Ct. 1949), and quoted therefrom as follows:
The contractor in effect argues that the clause under consideration means that the Authority is excusable for reasonable delay only. This construction of the no damage clause would subject the Authority to the inquiry in all instances of delay whether a reasonable person would have acted differently, thus raising the very question that the clause intended to avoid. In the absence of any claim of concealment, misrepresentation, or fraud, the contractor by such construction of the no damage clause cannot render meaningless an express condition of the contract which it knowingly and freely accepted. As was observed by the Supreme Court in Wells Bros. Co. v. United States, 254 U.S. 83, at page 87, 41 S.Ct. 34, at page 35, 65 L.Ed. 1948: "Men who take million-dollar contracts for government buildings are neither unsophisticated nor careless."
The Appellate Division concluded that where a party to a contract containing a "no damage" clause acts within the fair and legal import of its terms, he cannot be deprived of the benefit of his agreement unless, since every contract implies fair dealing between the parties, his conduct indicates bad faith or some other tortious intent.
Again, in 1965 the Appellate Division affirmed the trial court's granting of summary judgment against plaintiff contractor in Ace Stone, Inc. v. Wayne Tp., 89 N.J. Super. 482. The contractor had sued for damages it allegedly sustained as the result of delays due to the township's failure to have the work site fully available when plaintiff was directed by the township engineer to proceed with the job. The court held as a matter of law that the exculpatory clauses in the contract were broad enough and sufficiently explicit to exclude contractual liability for the claim asserted.
*209 The contractor appealed to the Supreme Court and that court reversed the Appellate Division and held that the motion for summary judgment was erroneously granted. It remanded the case to the Law Division to enable the parties to introduce such oral and documentary evidence as may be available and relevant in aid of interpretation. In doing so it reaffirmed the underlying legality of "no damage" clauses, 47 N.J. 431 (1966), but indicated that the line of cases represented by Sheehan v. City of Pittsburg, 213 Pa. 133, 62 A. 642 (Sup. Ct. 1905), may well be pertinent.
The city in Sheehan had entered into a contract with one Howley who in turn assigned the same to Sheehan for the construction of a street. The parties had assumed that the city had acquired the necessary right of way, but this was not so. By reason of the ensuing delay the contractor suffered a loss and sued the city, which defended under the following no-damage clause: "all loss or damage arising out of the nature of the work to be done under this contract or from any unforeseen obstructions or difficulties, which may be encountered in the prosecution of the same, or from the actions of the elements, or from any encumbrance on the line of the work, shall be sustained by the" contractor and no charge shall be made by the contractors for any hindrance or delay from any cause during the progress of the work, but it may justify his asking an extension of time. In holding it inapplicable the Pennsylvania Supreme Court pointed out that notwithstanding the breadth of the clause, it was clear that "the delay from the city's failure to obtain complete right of way was not in the class of difficulties and delays which were in the minds of the parties."
In Dallas v. Shortall, 87 S.W.2d 844 (Tex. Civ. App. 1935) rev'd on other grounds, 131 Tex. 368, 114 S.W.2d 536 (Sup. Ct. 1938), a delay in commencement of the construction of a tunnel under a contract with a city, caused by the failure of the city to acquire a right of way before *210 it had ordered commencement of the work, was held not the character of delay contemplated by a clause in the contract that the contractor should "not be entitled to any claim for damages for hindrance or delay for any cause whatever in the progress of the work," but if the contractor should be delayed for any cause beyond his control, the time for completing the work would be extended, since the delay contemplated was one encountered by the contractor in the progress of the work, whereas the delay in question was one encountered in the very beginning of the work, brought about by the city's failure to secure the right of way before it directed the work to begin. The court, in holding that a contractor to whom the contract had been assigned, could recover damages for the delay, noted that the contract necessarily assumed two fundamental facts: (1) that the city had the right to construct the tunnel under the premises involved, and (2) that the contractor had the ability to do the work.
And in American Pipe and Construction Co. v. Westchester Cty., 292 F. 941 (2 Cir.1923), damages for a delay of 258 days in furnishing a right of way so that work on the construction of a sewer could be continued by a contractor were held recoverable by the contractor notwithstanding a provision of the contract that the county could suspend at any time the whole or any part of the work if they deemed it for the best interest of the district, without compensation to the contractor other than extending the time for the completion of the work, since the delay could not be said to be for the "best interest of the district." The court regarded the failure to provide the right of way as a breach of the contract.
In Wilson & English Construction Co. v. New York C.R. Co., 240 App. Div. 479, 269 N.Y.S. 874 (App. Div. 1934), a provision in a contract for the construction of a spur track that the contractor would not be entitled to claim or receive from the contractee any sum whatever in excess of *211 the contract price, by reason or account of any delay caused in such work by the contractee, was held not to preclude a recovery by the contractor for damages for a delay caused by the failure of the railroad to provide a right of way and its delay in furnishing materials to the contractor, as required by the contract. The fact that the contractee did not have a right of way was not disclosed by the contractor.
In the case at bar there is a specific prohibition against the contractor making a claim for additional compensation on account of delays in the acquisition of the right of way. The language employed is not a general "no damage" clause, as in Sheehan.
While both parties assumed the right of access was available to them before defendant directed the plaintiff to proceed, the contractor had not only the right to examine the provisions of the agreements existing but had the duty to do so under article 1.2.11. No testimony has been adduced as to availability of the agreement between the City of Passaic and United Wool or its predecessors in title, but the court would have to assume that since it involved an interest in lands the agreement would be recorded in the county recording office. Certainly it was available to both parties at the Passaic City Clerk's office and the terms thereof were subject to the interpretation of counsel for the contractor as well as the State. While the contractor did make inquiry of defendant as to the status of the rights of way and assurances were given which the contractor sought to have reduced to writing, the contractor under the terms of the agreement was required to "ascertain the provisions of agreements between the State and property owners that may relate to his bid or to the work to be performed." This was not done. The assurances given by defendant were made in good faith and under an honest misconstruction of the true facts. No fraud nor wilful misstatement of facts are involved nor was the delay protracted to an unreasonable length. The delay from defendant's failure to obtain complete *212 right of way was here in the class of difficulties and delays which were in the minds of the parties, for specific reference was made to it in the specifications as supplemented. Christhilf v. Mayor and City Council of Baltimore 152 Md. 204, 136 A. 527 (Sup. Ct. 1927). The provisions in the present contract are unambiguous and call for a strict application. Psaty & Fuhrman, Inc. v. Housing Authority of Providence, supra. While such a strict application may bring about a harsh result, that fact will not prevent the application thereof. Erickson v. Edmonds School District, 13 Wash.2d 398, 125 P.2d 275 (Sup. Ct. 1942).
There has been no evidence introduced of any trade practices or customs which would alter the application of the above cited authorities.
Plaintiff argues that action of the Superior Court in granting a temporary injunction at the instance of United Wool in some way differentiates this case. This argument cannot be accepted. It is well recognized that many property owners are opposed to change and ofttimes will institute groundless litigation to halt or delay projects such as this. There is nothing before this court to indicate that defendant was in any way able to prevent or accelerate the termination of said action. The temporary injunction undoubtedly was issued to keep things in statu quo until the court could determine the validity of the property owner's complaint. Delays of this nature were certainly within the contemplation of this sophisticated contractor.
A judgment of no cause for action will be entered in favor of defendant and against plaintiff.