144 N.J. Super. 402 (1976)
365 A.2d 952
FRANKLIN CONTRACTING COMPANY, PLAINTIFF-APPELLANT,
v.
THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 28, 1976.
Decided October 15, 1976.
*404 Before Judges MATTHEWS, SEIDMAN and HORN.
Mr. Adrian M. Foley, Jr., argued the cause for appellant (Messrs. McElroy, Connell, Foley & Geiser, attorneys).
Mr. Richard L. Rudin, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General, attorney).
The opinion of the court was delivered by HORN, J.A.D.
This appeal revolves about the interpretation of the provisions of a highway construction contract between the parties. The case was tried below without a jury. At the conclusion thereof Judge Johnson rendered a written opinion which is reported at 134 N.J. Super. 198 (Law Div. 1975). On the basis of that opinion a judgment of no cause for action was entered against plaintiff. This appeal by plaintiff is from that judgment.
Since the trial judge's opinion sets forth the pertinent facts, we need not repeat them except as may be necessary for the sake of clarity in a discussion of the issues.
On or about July 10, 1969 plaintiff and the State, acting through the Department of Transportation, entered into a contract for the construction of a portion of the state highway known as Route 21 in Passaic County. Among other work, plaintiff was to erect a viaduct and relocate an existing sewer line in accordance with the contract and specifications. *405 It is undisputed that the State was required to furnish access to the required lands for plaintiff.
Three claims were made by plaintiff for extra costs and losses incurred by it in the performance of the contract. As mentioned by the trial judge in the reported opinion, they are: (a) those suffered by virtue of an injunction issued by the Superior Court of this State; (b) costs ordered by the Superior Court to be paid by plaintiff to the City of Passaic for temporary pumping following an apparent break of that city's sewer line, and (c) the overhead and ordinary profit lost by plaintiff as the result of the failure of the State to provide access for plaintiff to go upon lands needed for plaintiff to perform a portion of the work it was required to execute. The parties stipulated that plaintiff's damages as to (a) were $34,975.91; as to (b) $27,121.93, and as to (c) $53,201.61.
As to (a) and (b) we agree with the reasoning of the trial judge and affirm the resulting determination that plaintiff is not entitled to recover with respect to them.
As to the third claim, (c), we do not agree with the trial judge's determination. As already stated, the State was to furnish site access. This third claim involved work to be done upon lands owned by United Wool, Piece, Dyeing and Finishing Company (United Wool). As stated by the trial judge:
At the time the parties entered into the contract in question it was assumed by them that defendant had the right to enter upon the lands of United Wool as a derivative right granted by the property owner to the City of Passaic in an easement agreement permitting the city to service the sewer line which was to be relocated by plaintiff pursuant to its contract with defendant. Defendant had so assured plaintiff that this was so. [134 N.J. Super. at 204]
Because of its prior experience with the frequent frustrations involved in obtaining rights-of-way for highway construction, Franklin requested the State to document the availability of the right-of-way at a pre-construction conference held shortly after the award of the contract. At this meeting *406 the state representatives indicated that all "vacant lands" were available to the contractor. The State was told by its consulting engineer that it had the right to use the easement granted by United Wool to the City of Passaic. Accordingly, the State orally assured Franklin that it could use this easement across the United Wool property to lay some 400 feet of the new sewer line leading to a manhole at a proper pitch.
In April 1971 Franklin's attempt to gain access to the United Wool property via the easement was thwarted by the "continuing antagonistic attitude of the owner, who flatly refused to make the site available." Joint efforts to convince United Wool to permit access were without avail. Finally, the State instituted condemnation proceedings and filed a declaration of taking on October 7, 1971.
The trial judge held that the "no damage" clauses in the contract specifically precluded Franklin from recovering for its losses due to this delay. 134 N.J. Super. at 207, 211. It also ruled that Franklin did not meet its contractual obligation to ascertain the true nature of the United Wool easement and that the oral assurances given by the State were made "in good faith and under an honest misconstruction of the true facts." It found that the specific delay "was here in the class of difficulties and delays which were in the minds of the parties, for specific reference was made to it in the specifications as supplemented * * *." 134 N.J. Super. at 211-212.
The resolution of the issue depends on the facts in the light of the contractual obligations of the parties. The pertinent exculpatory clauses are quoted in the reported opinion of the court below. 134 N.J. Super. at 205.
Such "no damage" clauses, where applicable, have been upheld as binding upon the contractor where the language used is as clear and unambiguous as could fairly have been employed for the purpose of the very contingency which arose. A. Kaplen & Son v. Passaic Housing Authority, 42 N.J. Super. 230, 233 (App. Div. 1956). And where a party to *407 a contract containing a "no damage" clause acts within the fair and legal import of its terms, he cannot be deprived of the benefit of his agreement unless, since every contract implies fair dealing between the parties, his conduct indicates bad faith or some other tortious intent. Gherardi v. Trenton Bd. of Ed., 53 N.J. Super. 349, 365 (App. Div. 1958). In both of these cases the court found that the delays were clearly among those contemplated by the parties.
The contract documents were prepared by the State, and the interpretation thereof will be made strictly against the State in the case of ambiguity or lack of clarity. Terminal Const. Corp. v. Bergen Cty., Dist. Auth., 18 N.J. 294, 302 (1955).
Ace Stone, Inc. v. Wayne Tp., 47 N.J. 431 (1966), furnishes the appropriate principles which, applied to the facts of this case, warrant recovery. In that case plaintiff contracted with defendant municipality to do general work involving a sewer line project. At a preconstruction meeting the municipal engineer told plaintiff that "there were no easement problems and that the plaintiff `could commence without any interruption since any easements which the Township required would have been completed and acquired' before the plaintiff received notice to proceed."
Plaintiff could only start at one site instead of three, as it was organized to do, because defendant had not acquired all of the necessary rights-of-way or easements. Although the exculpatory clause did not specifically mention delays in providing access on account of failure to obtain easements or rights-of-way, the Supreme Court, in reversing a summary judgment entered against plaintiff and in remanding the case to the trial court, did not accept the constricted view that recovery or not depended upon whether the "no damage" clause was general or specific. It said: "The admitted goal is to ascertain and effectuate the contemplation or common intention of the parties." 47 N.J. at 439.
*408 In the case at bar the State in effect contends that it has the right to mislead the contractor (albeit innocently), to have it rely upon its representations to its detriment, and then to avoid liability for the contractor's ensuing damage on the basis of the "no damage" clause. This raises questions of fairness and good faith, but we need not decide on such thesis.
We do not construe the pertinent clauses as the trial judge did. Article 1.2.1 provides in part:
The Bidder warrants that, before submitting his Proposal, he became familiar with the Plans, Specifications and other documents that will form parts of the Contract, investigated in detail the site of the Project and the available means of access, and made such examination thereof as necessary to satisfy himself in regard to the character and amount of work involved. He also warrants that he can secure the necessary labor and equipment, and that the materials he proposes to use will conform to the requirements therefor and can be obtained by him in the quantities and at the time required. The cost of providing access to the Project will not be paid for under any specific scheduled item but shall be included in the prices bid for the various items scheduled in the Proposal.
"Available means of access" and "cost of providing access to the Project," considered in their context, indicate a physical rather than a legal access. These phrases are coupled with "investigated in detail the site of the Project" and "regard to the character and amount of work involved."
Article 1.2.11, "Familiarity with Work," refers to "physical characteristics at the site of the Project" in the first paragraph. The second paragraph reads:
Before submitting his Proposal, the Bidder shall ascertain from the Director, Division of Right of Way, Acquisition and Titles, the status of right-of-way acquisition, of the availability and vacation of buildings which are to be removed or demolished by the Contractor, and of the vacation and removal or demolition of buildings on the site of the Project by other parties, and he shall ascertain the provisions of agreements between the State and property owners that of buildings which are to be removed or demolished by the Contractor, shall also confer with the said Director on the above mentioned matters immediately after award of the Contract and at such other times *409 thereafter as may be necessary or advisable. The Contractor shall be governed by the provisions of the above mentioned right of way agreements.
This requires only that the bidder, before submitting his proposal, shall "ascertain from the Director" the status of right-of-way acquisition, shall "ascertain the provisions of agreements between the State and property owners that may relate to his bid or to the work to be performed," and "shall be governed by the provisions of the above right of way agreements." It is reasonably manifest from these clauses that the bidder was not required to do more than to ascertain the "status" of right-of-way acquisition. It was assured about that, as admitted by the State.
The obligation of the contractor to ascertain the provisions of agreements between the State and property owners that may relate to his bid or to the work to be performed and to be governed by the provisions of the right-of-way agreements has no relation to ascertaining whether the State had obtained legal title or legal access to the necessary site; otherwise the language would have specifically stated that intention. It appears to be farfetched that this language was intended under the circumstances surrounding the performance of the work by plaintiff to require a contractor to question the assurance given to it by the State that the contractor would have access to the site as a matter of law.
The supplementary portion of Article 1.2.11 refers only to the bidder's obligation to "make such investigations and determinations as may be necessary to secure all information he may consider pertinent to his bidding of the various demolition items, regardless of whether such information is or is not shown on the Plans or included in these Specifications." This requirement is limited to "bidding of the various demolition items."
Finally, Article 1.2.11 provides in part:
The contractor shall make no claims for additional compensation on account of delays or necessary alterations in the procedure of his *410 work that may be caused by delays in the vacating or removal of buildings by others and/or the acquisition of right-of-way.
Of necessity, this must be read in the light of the other clauses and the facts. Here the contractor was assured that legally there was a right-of-way. It could hardly then be contemplated that the contractor, Franklin, would have its lawyer or someone else figuratively look over the shoulder of the State's representative to ascertain if his assurance was accurate.
In a case where inquiry of the Director has disclosed that the status of one or more rights-of-way is such that they have not been obtained, it would be clear that in such circumstances this last clause would be operative in foreclosing the contractor from making any claim for delay. But where, as here, inquiry as to the status brought forth a representation that there was no problem with respect to same, it can hardly be claimed that this clause was intended to render the State immune from liability or that the parties contemplated delay because the State did not have a valid right-of-way.
Finding as we do that the "no damage" clauses under the circumstances here presented could not have been intended to bar recovery by Franklin, and that the State's failure to perform its obligation to timely furnish access to the United Wool site resulted in the stipulated damage incurred by Franklin, the judgment of no cause for action insofar as the third claim, (c), is vacated. Judgment will be entered with respect to this claim for the stipulated amount, $53,201.61, in favor of plaintiff and against defendant. R. 2:10-5.