42 N.J. Super. 230 (1956)
126 A.2d 13
A. KAPLEN & SON, LTD., A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
HOUSING AUTHORITY OF THE CITY OF PASSAIC, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 1956.
Decided October 25, 1956.
*231 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Murray A. Laiks argued the cause for plaintiff-appellant (Messrs. Heller & Laiks, attorneys).
Mr. Martin Klughaupt argued the cause for defendant-respondent.
The opinion of the court was delivered by CONFORD, J.A.D.
This is an appeal by the plaintiff, contractor for the erection of public housing in the City of Passaic by written agreement with the defendant, from the entry of a summary judgment in the Law Division in favor of the defendant in an action for damages allegedly sustained as a result of unjustified delay in delivery of the job sites by the defendant to the plaintiff. Defendant admits the delay but contends that the very contingency was anticipated by the parties in the written contract and that the agreement was that no damages would be recoverable by the contractor in such case but that it would be allowed only a corresponding extension of the date fixed by the contract for completion of the work. We are in essential agreement with the position of the defendant and are satisfied that the material facts were fully exposed by the affidavits submitted on the motion and dictated the disposition made by the trial court as a matter of law. Evans v. Rohrbach, 35 N.J. Super. 260, 269 (App. Div. 1955), certification denied Evans v. Matthews, 19 N.J. 362 (1955).
The project in question was in the nature of slum clearance, and the affidavits show without contradiction that defendant had to clear the various site areas of prior occupants before they could be turned over to the defendant as construction locations. The contract, which was entered into January 15, 1952 after public competitive bidding, for a price of $2,714,000, provided that the work should be commenced at the time fixed in the "first Notice to Proceed" which order "may also designate the first block, section or area, or the first building or buildings within a block, section or area, on which the Contractor shall commence work"; *232 that "the entire work shall be fully completed within 550 consecutive calendar days after the time stipulated in the first Notice to Proceed"; that "the entire site will be released to the Contractor within 180 consecutive calendar days after the date of the first Notice to Proceed"; and, finally, so far as is here material, in paragraph 13, as follows:

"13. DELAYS  DAMAGES
"(a) * * * Provided further that should the entire site not be released to the Contractor within the time specified in Section 1(a) (3) of the Special Conditions, the Local Authority shall, subject to the prior approval of the PHA, extend the time for completing the work by the number of days the delivery of the entire site has been so delayed.
(b) No payment, compensation or adjustment of any kind (other than the extensions of time provided for in (a) above) shall be made to the Contractor for damages because of hindrances or delays from any cause in the progress of the work, whether such hindrances or delays be avoidable or unavoidable and the Contractor agrees that he will make no claim for compensation, damages or mitigation of liquidated damages for any such delays, and will accept in full satisfaction for such delays said extension of time."
The first notice to proceed was given by defendant to the plaintiff on February 27, 1952, and subsequently such notices were given by the defendant as various areas on the site were cleared. There is no factual denial in defendant's affidavits of the statement in the affidavit of the executive director of the defendant to the effect that "the successive areas were released to the plaintiff by the Housing Authority as rapidly as the premises were vacated by occupants."
It is uncontested that full site delivery to plaintiff was not effected by August 25, 1952 as stipulated by the contract (180 calendar days after February 27, 1952) nor until January 20, 1953. On August 26, 1952 plaintiff wrote to the defendant, reviewing the contract terms and stating that the entire site was required to have been delivered to it by August 25, 1952 and that "many additional expenses will be incurred by us as a result of the construction period's being lengthened." The letter concluded: "It is, therefore, necessary for us to make `time of the essence' of the contract * * *."
*233 It is plaintiff's contention that the delay in site delivery, particularly because of the winter months involved, resulted in damages to it of $159,541.41 and it is for the recovery of this amount that this action is brought.
It is entirely plain to us that in language as clear and unambiguous as could fairly have been employed for the purpose the very contingency upon which plaintiff predicates its cause of action was contemplated by the parties and that it was expressly stipulated that in such case plaintiff should have no claim for damages but only a corresponding allowance of time to complete the contract. Such an allowance it has been granted. Any construction of the agreement which would give it the damages it seeks here would, in effect, put it unfairly and discriminatorily, and therefore illegally, in a better position than that which it voluntarily chose to enter into, and better, also, than that which all public bidders, actual and potential, for the contract awarded to plaintiff, presumably weighed and analyzed before submitting their bids. Cf. William A. Carey & Co. v. Borough of Fair Lawn, 37 N.J. Super. 159, 163 (App. Div. 1955).
Plaintiff argues that such an agreement as that here involved, which excuses the public agency from damages for all delays whether they be "avoidable or unavoidable," is against public policy and should be held unenforceable as tending to increase the cost of public construction because of the protective margins which bidders on such work are forced to include in their estimates to cover the uncertainty of the contingency. Aside from our doubt whether public policy is appropriately a basis for judicial interference with freedom of contract by and with public agencies where the Legislature has not spoken on the matter, we are not persuaded by the contention on the merits. Stipulations like the questioned proviso are obviously conceived in the public interest in protecting public agencies contracting for large improvements on the basis of fixed appropriations or loan commitments against vexatious litigation based on claims, real or fancied, that the agency has been responsible for unreasonable delays. See Psaty & Fuhrman, Inc., v. Housing *234 Authority of City of Providence, 76 R.I. 87, 68 A.2d 32, 10 A.L.R.2d 789 (Sup. Ct. 1949); Christhilf v. City of Baltimore, 152 Md. 204, 136 A. 527 (Ct. App. 1927). Exculpatory clauses of the kind here involved have long been in vogue and have been generally sustained and enforced by the courts. Annotation 115 A.L.R. 65, 80-87; Mack v. State, 122 Misc. 86, 202 N.Y.S. 344 (Ct. Cl. 1923), affirmed 211 App. Div. 825, 206 N.Y.S. 931 (App. Div. 1924); Psaty & Fuhrman, Inc., v. Housing Authority of City of Providence, supra; Ericksen v. Edmonds School District, 13 Wash.2d 398, 125 P.2d 275 (Sup. Ct. 1942); Hayes Construction Co. v. State, 254 App. Div. 915, 5 N.Y.S.2d 698 (App. Div. 1938); Christhilf v. City of Baltimore, supra; Wells Bros. Co. of New York v. United States, 254 U.S. 83, 41 S.Ct. 34, 65 L.Ed. 148 (1920); Wood v. United States, 258 U.S. 120, 42 S.Ct. 209, 66 L.Ed. 495 (1922); Coleman Bros. Corp. v. Commonwealth, 307 Mass. 205, 29 N.E.2d 832 (S. Jud. Ct. 1940); City of Orlando v. Murphy, 84 F.2d 531 (5 Cir. 1936), certiorari denied 299 U.S. 580, 57 S.Ct. 45, 81 L.Ed. 427 (1936); Underground Construction Co. v. Sanitary District, 367 Ill. 360, 11 N.E.2d 361, 115 A.L.R. 57 (Sup. Ct. 1937). The problem has apparently not been previously presented to the courts of this State, but we are aware of no reason in logic or sound policy why such a contract stipulation as was here voluntarily entered into between the parties should not be held binding against the contractor.
Plaintiff has cited to us cases wherein it has been considered that an exculpatory clause would not bar a claim for damages for delay in various kinds of exceptional situations: as, for example, where the delay by the public body was of a kind not contemplated by the parties, Sheehan v. City of Pittsburg, 213 Pa. 133, 62 A. 642 (Sup. Ct. 1905); where the delay was deemed to amount to an abandonment of the project, People ex rel. Wells & Newton Co. of New York v. Craig, 232 N.Y. 125, 133 N.E. 419 (Ct. App. 1921); or where the delay was caused by the active interference or bad faith of the public agency, American Bridge Co. v. State of *235 New York, 245 App. Div. 535, 283 N.Y.S. 577 (App. Div. 1935). But none of these special situations concern us here as the possibility of delays in site clearance in the present case was assuredly in contemplation, the delay was not grossly inordinate and there is no factual support whatever in the affidavits for the vague and unparticularized charges by plaintiff in the complaint that the delays were due to "bad faith" by defendant and that defendant "actively interfered with the performance of plaintiff's work." These allegations seem to us tailored more to a pattern inspired by assiduous study of the authorities cited than upon the operative facts of this case. Bare conclusions in pleadings, without factual support in tendered affidavits, will not defeat a meritorious application for summary judgment. Judson v. Peoples Bank & Trust Co., 17 N.J. 67, 75 (1954). The uncontradicted facts set forth in defendant's affidavits affirmatively demonstrate its good faith in the matter and that it did not interfere with plaintiff's operations except to the incidental and unavoidable extent of holding up its work until it could clear the job sites, a contingency the parties expressly agreed would work no liability upon defendant. It was palpably shown that there was no genuine issue of fact in any respect material to the immunity of the defendant from damages under the contract as we read it. Summary judgment was therefore properly entered. R.R. 4:58-3.
A collateral question was raised in the Law Division concerning whether plaintiff's rights to the damages it claimed were not forfeited for non-compliance with the provisions of the contract relative to the procedure for assertion of claims thereunder. In view of our conclusion on the merits of the claim, we need not consider that question. It may be noted, in passing the point, that defendant's letter of August 26, 1952, which it contends was the notice of claim required of it by the contract, appears to us to be no more than a unilateral, and therefore ineffectual, effort to alter the effect of the exculpatory provisions of paragraph 13 of the contract.
Judgment affirmed.