53 N.J. Super. 349 (1958)
147 A.2d 535
MARIO E. GHERARDI, PLAINTIFF-APPELLANT,
v.
BOARD OF EDUCATION OF THE CITY OF TRENTON, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 1958.
Decided December 24, 1958.
*353 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Ralph S. Mason argued the cause for appellant (Messrs. Mason, Griffin & Moore, attorneys; Mr. Kester R. Pierson, on the brief).
*354 Mr. Henry M. Hartman argued the cause for respondents Board of Education of the City of Trenton, Samuel Mather and Harry J. Bodine.
Mr. Philip J. Albert argued the cause for respondents Louis S. Kaplan, Albert E. Micklewright and Samuel Mountford, partners doing business as Micklewright & Mountford, and Philip S. Slack & Co. (Messrs. Levy, Levy and Albert, attorneys for Louis S. Kaplan; Mr. J. Conner French, attorney for Micklewright & Mountford; Mr. Mario H. Volpe, attorney for Philip S. Slack & Co.).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff appeals from a summary judgment entered in the Superior Court, Law Division, on defendants' respective motions for an order dismissing the action because the complaint failed to state a claim or, in the alternative, for summary judgment on the ground that there existed no genuine issue as to any material fact.

I.
On November 4, 1954 defendant Board of Education of the City of Trenton ("Board") entered into a written contract with plaintiff whereby he agreed to perform the general construction work on the Monument Elementary School for the sum of $500,850. Plaintiff was to complete his undertaking in 400 days. On the same date the Board entered into contracts with four other contractors for plumbing and drainage, heating and ventilating, electrical work, and structural steel and miscellaneous metal work, respectively. These latter contracts called for completion within 365 days. Every contract let by the Board provided that the materials and work were to be in accordance with the drawings and specifications, and these were expressly made part of the contract.
Paragraph 4 of plaintiff's contract provided that should he "be delayed in the prosecution or completion of the work by act, neglect, or default of the Owner [Board], of the Architect, or of any other contractor employed by the Owner *355 upon the work, * * * then the time herein fixed for the completion of the work [400 days] shall be extended for a period equivalent to the time lost by reason of any or all the causes aforesaid, * * *." The extended period was to be determined and fixed by the architects (defendants Micklewright & Mountford and Louis S. Kaplan), provided written application was made therefor within 48 hours of the occurrence of the delay. Paragraph 5 gave the Board the power to terminate the employment for failure to prosecute the work with promptness and diligence, upon certification of the architects and after written notice to the contractor. It appears that similar contracts were executed by the Board and the other contractors.
The specifications provided that the plumbing, heating and ventilating, electrical, and structural steel and miscellaneous work be done in coordination with the work of the general construction contractor and completed in such a way as not to hold up his work. The architects were to coordinate the work of the various contractors, and were given the customary powers exercisable by architects on projects of like nature. If, through acts of negligence on the part of the contractor, any other contractor or subcontractor suffered loss or damage on the work, the contractor agreed to settle with any such other contractor or subcontractor by agreement or arbitration.
Paragraph 3-45 of the specifications, dealing with "Delays-Damages," iterated the right of the Board, on written notice, to terminate a contractor's right to proceed with the work where he refused or failed to prosecute the work or any part thereof with such diligence as would insure its completion within the time specified or any extension thereof, or failed to complete the work within such time. In case the Board did not terminate the right of a contractor to proceed, he was to continue the work and pay liquidated damages of $20 for each calendar day of delay. The right of the contractor to proceed was not to be terminated, nor was he to be charged with liquidated damages, because of any delays in the completion of the work due to unforeseeable causes beyond his control and without his fault or negligence, provided *356 the contractor notified the Board in writing within ten days of the causes of the delay. Paragraph 3-45 then goes on to provide:
"* * * The Architects shall ascertain the extent of the delay and the Owner [Board] shall extend the time for completion of the work when, in the judgment of the Architects, the findings of fact justify such an extension. * * * Apart from extension of time for unavoidable delays, no payment or allowance of any kind shall be made to the Contractor as compensation for damages on account of hindrance or delay from any cause in the progress of the work, whether such delay be avoidable or unavoidable." (Italics ours.)
Paragraph 3-33 of the specifications, entitled "Personal Liability," provided that
"In carrying out the provisions of this Contract or in exercising any power or authority granted them by their position, there shall be no liability upon the Owner [Board] and his authorized representatives or assistants, either personally or as officials of the Owner, it being understood that in such matters they act as agents and representatives of the Owner."
There were a number of delays in connection with the heating and ventilating work, electrical work, and steel and metal work, so that the school was not finally completed and accepted until October 4, 1956, some 11 months after the completion date originally contemplated. Although during the course of the work plaintiff addressed a number of letters to the architects calling their attention to one or another item of material or work that was delaying the project, he admits that he never asked for an extension of time to perform. The affidavits indicate that the architects promptly took up with the other contractors involved plaintiff's complaints concerning delays as to various items which he contended were holding up his work, but that these matters were not taken care of as quickly as plaintiff might have desired. He requested and received final payment under the contract without protest as to any damages he might have suffered by reason of delay. He instituted the present suit exactly one year after the school was accepted by the Board.

*357 II.
The complaint is in nine counts. Plaintiff charges: (1) Active interference by defendant Board in the completion of his contract, as well as breach of contract, because of delays, failure to supervise the construction, failure to insist on strict compliance with contract terms by the other contractors, and failure to insist on and collect penalties for their delay. (2) Defendant Board, by its agents or servants, including defendant architects, breached its contract with plaintiff in failing properly to supervise and coordinate the construction work, and actively interfered with plaintiff's work, preventing him from completing it within time. (3) Defendant architect Kaplan, who was actively in charge of the project, defendant Bodine, as chairman of the Board's Committee on Buildings and Grounds and alleged to have been actively in charge of the project for the Board, and defendant Mather, an employee of the Board and alleged to have been actively in charge of the project as Superintendent of Buildings and Grounds, jointly and severally failed to coordinate the work on the school and interfered with plaintiff's performance of his contract. (4) Defendant Philip S. Slack & Co., who held the heating and ventilating contract, breached the contract and actively interfered with plaintiff's completion of his contract by failing to complete its work within the prescribed time and to coordinate its work with that of the other contractors. (5) and (6) Plaintiff makes the same charge as to defendant Brown Electric Co., which held the electrical contract, and defendant Craftsman Iron Works, which held the structural steel and miscellaneous metal work contract. (7) Defendant architects deleted plaintiff's name from the commemorative tablet and refused to approve a tablet with plaintiff's name on it, in violation of the conditions of the contract that such a tablet be erected setting forth plaintiff's name. (8) Defendant Kaplan negotiated directly with plaintiff's subcontractor and arranged for the substitution of vinyl tile in lieu of asphalt vinyl tile, resulting in an extra expense for which *358 plaintiff seeks reimbursement. Finally, (9) defendants jointly and severally induced plaintiff to submit a bid by representations they knew or should have known plaintiff would rely upon, namely, that defendant contractors could and would complete their work in 365 days, that all work would be coordinated, that the contracts with defendant contractors would be enforced, and that plaintiff could complete his work within 400 days; that plaintiff relied on these representations in submitting its bid and entering into a contract; that defendants knew or should have known that defendants' contract could not be completed within the time specified, the work would not be coordinated, nor the terms of the several contracts enforced; and that defendants failed to perform their contracts in accordance with their terms. Plaintiff sought $50,000 damages.
The answers generally denied the major allegations of the complaint and set up a number of separate defenses which need not be detailed. The notices of motion for dismissal of the complaint or, in the alternative, for summary judgment, followed, with supporting affidavits. Plaintiff filed an answering affidavit, attaching the specifications and a number of letters that had passed between himself and the architects in the period January 4, 1955 to July 10, 1956. The Law Division judge filed an opinion concluding that defendants were entitled to summary judgment as a matter of law and then entered the judgment under appeal.
Under R.R. 4:58-3 a motion for summary judgment is to be granted upon the pleadings, depositions and admissions on file, together with the affidavits, if any, where they show palpably that there is no genuine issue as to any material fact challenged. Bare conclusions in the pleadings, without factual support in the tendered affidavits, will not defeat a meritorious application for summary judgment. The considerations controlling our summary judgment practice are fully set out in Judson v. People's Bank & Trust Co. of Westfield, 17 N.J. 67, 73 et seq. (1954). In the light of what was said there we conclude that summary judgment was fully justified in the present case.
*359 There is no reference in plaintiff's brief, nor was any made at the oral argument, to the seventh count dealing with the commemorative tablet. The claim may be considered abandoned. We note, incidentally, that paragraph 8-08 of the specifications, relating to the tablet, makes no mention of the general construction contractor's name being included.
Similarly, the brief and oral argument were devoid of any reference to the eighth count, directed against defendant Kaplan with respect to the substitution of vinyl tile. We do not consider the claim as being pressed on appeal.

III.
Plaintiff alleges that his complaint is grounded in (1) breach of his contract by the Board, its architects and the other contractors; (2) active interference with the performance of his contract by the Board, the architects, the Chairman of the Committee on Buildings and Grounds, the Superintendent of Buildings and Grounds and the other contractors; and (3) equitable fraud by the same parties in holding out that the school building could and would be built by timely performance of the work within the contract period, and inducing plaintiff to bid based on this representation of coordination and performance by all. Although the complaint confusingly utilizes the terms "breach of contract" and "active interference" in the same sentences and throughout the same counts, and the brief also uses them interchangeably, we will consider them separately, as plaintiff at oral argument urged us to do.
Preliminarily, it may be observed that, all other considerations aside, paragraph 3-33 of the specifications, reproduced above, relieved defendant Bodine, as Chairman of the Committee on Buildings and Grounds of the Board, and defendant Mather, Superintendent of Buildings and Grounds, from personal liability. They were "authorized representatives" of the Board. Bodine's affidavit states that he did not coordinate nor was he responsible for coordinating *360 the work on the school; and Mather's affidavit unequivocally asserts that he had no duties to perform during the period of construction, and had nothing whatsoever to do with coordinating the work of the several contractors. These statements are not negated. There is nothing in plaintiff's affidavit to support the bare conclusions made in the complaint as to these defendants.
We deal first with plaintiff's claim of breach of contract, and this may be considered in a double aspect: breach through delays and breach by reason of active interference (here we give plaintiff the benefit of the inference that he is pleading an action in contract rather than tort).
Since defendant architects, employed by the Board, did not have any contractual obligations or agreement with plaintiff, they could not, under any theory, be liable to him for any breach of contract since clearly there was no privity of contract between the parties. Similarly, defendant contractors had no contract with plaintiff. The provisions relating to the time within which each contractor was to complete his work were intended to be binding upon the respective contractors, subject to such extensions as might be granted by the Board and its authorized agents. The time limitation provision of each contract was solely for the benefit of the Board and gave plaintiff no right over against a contractor who was unable to complete his work within the time required.
This to one side, and dealing with the matter in its broader aspect, summary judgment was properly granted. At the heart of plaintiff's complaint is the claim that he suffered damages because of recurrent delays brought about by defendants, individually and collectively, through their failure to comply with the terms of their several contracts. The instant case presents the usual picture of normal delays which invariably accompany the construction of a building of the size and type of the Monument School. The contract and specifications contemplated that there would be such delays, and specifically provided for an extension of time within which work might be completed if delays were encountered. *361 (The provisions of paragraph 4 of the contract and paragraph 3-45 of the specifications have already been referred to.) Plaintiff never availed himself of these provisions. Extension of time was his exclusive remedy, and he is bound by his agreement. Cf. Connolloy v. Board of Education of Trenton, 5 N.J. Misc. 39 (Sup. Ct. 1926). Accordingly, plaintiff is now precluded from an action for damages on account of the delays. A. Kaplen & Son, Ltd. v. Housing Authority of City of Passaic, 42 N.J. Super. 230 (App. Div. 1956), where similar provisions were involved.
The claim of active interference (in its contract aspect) is without foundation. The facts and circumstances set forth in the complaint and the affidavits submitted by the parties show that the alleged "active interference" amounted to nothing more than delays which clearly were in the contemplation of all the parties from the day the bids were first solicited. Indeed, the affidavits unequivocally show that defendants in no way actively interfered with the orderly progress of the work.

IV.
Considering plaintiff's claim of active interference in its tort aspect  and such seems to be the characterization made by plaintiff at the close of his brief  examination of the complaint demonstrates that it does not set forth any tort actually committed by defendants which would give rise to a cause of action in favor of plaintiff against them. The flat charge of "active interference" amounts to nothing more than a conclusion on plaintiff's part. His complaint and affidavit are devoid of any allegation setting forth an intent on defendants' part to injure him in his business, or that any of the acts allegedly done or failed to be performed by defendants were done maliciously or for the purpose of interfering with plaintiff's business. Plaintiff cites McCue v. Deppert, 21 N.J. Super. 591 (App. Div. 1952). That case lends no support to his argument because it definitely holds that an intent to injure another, without *362 justifiable cause and with malicious purpose, is an essential allegation in an action of tort to recover for interference with one's business or contract. See also the leading case of Louis Kamm, Inc. v. Flink, 113 N.J.L. 582 (E. & A. 1934). 30 Am. Jur., Interference, § 42, p. 84 (1958), also cited by plaintiff, is to the same effect.
It would appear that plaintiff's inspiration for the charge of active interference was taken out of context from the Kaplen case, above, 42 N.J. Super., at page 234, discussed hereinafter, where plaintiff argued "active interference" in an attempt to escape the force of certain exculpatory clauses raised as a defense in an action upon a contract. We find that plaintiff has failed to cite any authority in support of his contention that the acts which he denotes in his complaint as active interference would support an independent action in tort. His citation of Terminal Construction Corp. v. Bergen County Hackensack River Sanitary Sewer District Authority, 18 N.J. 294 (1955), in support of his claim of "tortious active interference" is not apt. The Terminal case was an action in contract; further, it did not deal with a "no damage clause" such as is involved here and which we discuss below, but with an entirely different proposition, namely, whether the exercise by an engineer of the authority vested in him as arbiter was arbitrary and fraudulent.

V.
Plaintiff, by the very terms of his contract, is precluded from obtaining the type of relief sought under the first eight counts of his complaint. Paragraph 3-45 of the specifications, as noted above, expressly provided that "Apart from extension of time for unavoidable delays, no payment or allowance of any kind shall be made to the contractor as compensation for damages on account of hindrance or delay from any cause in the progress of the work, whether such delay be voidable or unavoidable." Plaintiff claims that this provision must be construed to mean "contemplated or unavoidable delays." We find no ambiguity whatsoever in this exculpatory clause; it is a complete bar to the action.
*363 The same contractual provision was considered by this court in A. Kaplen & Son, Ltd. v. Housing Authority of City of Passaic, above, 42 N.J. Super. 230. In sustaining this type of provision we reviewed the authorities and held that
"It is entirely plain to us that in language as clear and unambiguous as could fairly have been employed for the purpose the very contingency upon which plaintiff predicates its cause of action was contemplated by the parties and that it was expressly stipulated that in such case plaintiff should have no claim for damages but only a corresponding allowance of time to complete the contract. Such an allowance it has been granted. Any construction of the agreement which would give it the damages it seeks here would, in effect, put it unfairly and discriminatorily, and therefore illegally, in a better position than that which it voluntarily chose to enter into, and better, also, than that which all public bidders, actual and potential, for the contract awarded to plaintiff, presumably weighed and analyzed before submitting their bids. * * *
Plaintiff argues that such an agreement as that here involved, which excuses the public agency from damages for all delays whether they be `avoidable or unavoidable,' is against public policy and should be held unenforceable as tending to increase the cost of public construction because of the protective margins which bidders on such work are forced to include in their estimates to cover the uncertainty of the contingency. Aside from our doubt whether public policy is appropriately a basis for judicial interference with freedom of contract by and with public agencies where the Legislature has not spoken on the matter, we are not persuaded by the contention on the merits. Stipulations like the questioned proviso are obviously conceived in the public interest in protecting public agencies contracting for large improvements on the basis of fixed appropriations or loan commitments against vexatious litigation based on claims, real or fancied, that the agency has been responsible for unreasonable delays. [citing cases] * * * [W]e are aware of no reason in logic or sound policy why such a contract stipulation as was here voluntarily entered into between the parties should not be held binding against the contractor." (42 N.J. Super. at pages 233-234)
Plaintiff attempts to distinguish the Kaplen case upon the ground that it left open the question of whether damages might be recovered in certain "exceptional situations" notwithstanding a "no damage" clause, and argues that the facts of the present case are within one of the exceptional circumstances therein mentioned  active interference or bad faith. As in the Kaplen case, plaintiff has attempted to frame his complaint on the basis of the New York case of *364 American Bridge Co. v. State of New York, 245 App. Div. 535, 283 N.Y.S. 577 (App. Div. 1935), whence the phrase "active interference" is derived. We find the factual situation in the American Bridge case completely inapplicable. The court there held that the exculpatory clause, intended to apply to an action forced upon the contractor by the delays of another contractor, could not be urged as a defense against an affirmative course of action required by the state itself. We held in Kaplen that the special situation posed in the American Bridge case was not present, despite unfounded allegations in the complaint that the delays were due to defendant's "bad faith" and that defendant had "actively interfered with the performance of plaintiff's work"  allegations also found in the instant complaint. As we said in Kaplen, plaintiff's allegations seem "tailored more to a pattern inspired by assiduous study of the authorities cited than upon the operative facts of this case." 42 N.J. Super. at page 235.
It is evident, as in Kaplen, that any delay alleged in the complaint was patently of the type envisaged by the contractual provisions, so that there is no basis for not enforcing them. See, also, Taylor-Fichter Steel Construction Co. v. Niagara Frontier Bridge Comm., 261 App. Div. 288, 25 N.Y.S.2d 437 (App. Div. 1940), affirmed without opinion, 287 N.Y. 669, 39 N.E.2d 290 (Ct. App. 1941), where the court held that a similar contractual provision barred a contractor from recovery of damages due to the delay of other contractors, and that such delay did not constitute "interference," as claimed; Ericksen v. Edmonds School District No. 15, 13 Wash.2d 398, 125 P.2d 275 (Sup. Ct. 1942), as well as the cases cited in Kaplen, 42 N.J. Super. at pages 233-234.
It is plaintiff's further contention that the exculpatory clause means that defendants are excused from damages only in the case of reasonable delay. The same argument was asserted and dealt with in Psaty & Fuhrman, Inc. v. Housing Authority of City of Providence, 76 R.I. 87, 68 A.2d 32, 10 A.L.R.2d 789 (Sup. Ct. 1949):
*365 "The contractor in effect argues that the clause under consideration means that the Authority is excusable for reasonable delay only. This construction of the no damage clause would subject the Authority to the inquiry in all instances of delay whether a reasonable person would have acted differently, thus raising the very question that the clause intended to avoid. In the absence of any claim of concealment, misrepresentation, or fraud, the contractor by such construction of the no damage clause cannot render meaningless an express condition of the contract which it knowingly and freely accepted. As was observed by the Supreme Court in Wells Bros. Co. v. United States, 254 U.S. 83, at page 87 [41 S.Ct. 34, at page 35, 65 L.Ed. 148]: `Men who take million-dollar contracts for Government buildings are neither unsophisticated nor careless.'
The parties to a contract are free to agree upon any terms that are not illegal. No damage clauses similar to the one under consideration, which are most frequently found in construction contracts especially when they relate to public improvements, are not ordinarily in violation of law. We concede that such a clause if unambiguous calls for strict application but it cannot be treated as meaningless and futile, as the contractor attempts to do in the instant cases. * * *" (76 R.I. at page 93, 68 A.2d at page 35.)
Where a party to a contract containing a "no damage" clause acts within the fair and legal import of its terms, he cannot be deprived of the benefit of his agreement unless, since every contract implies fair dealing between the parties, his conduct indicates bad faith or some other tortious intent. There is nothing in the record to support the allegations of bad faith or any tortious intent. As already stated, the delays alleged in the complaint as supporting plaintiff's theory of breach of contract and active interference were nothing more than the ordinary and usual types of delay with which most contractors are frequently confronted. They are part of the risks and uncertainties which he impliedly accepts in signing such an agreement.
It is claimed that the Board had a duty under its agreements with the several contractors to terminate them in case of delay and to seek damages or penalties. These remedies were exclusively for the benefit of the Board, and not plaintiff.

VI.
Although the ninth count of the complaint was framed partially in terms of legal fraud, plaintiff in his *366 brief acknowledges that representations on defendants' part were devoid of any intent to deceive. In his brief and at oral argument he expressly disavows that he is suing for legal fraud, but claims he has properly pleaded and presented a case of equitable fraud. This theory, raised for the first time on appeal, provides no basis for reversing the summary judgment granted by the Law Division.
A plaintiff seeking damages in a tort action based upon misrepresentation must allege an intent to deceive, as well as all the other elements requisite to an action grounded in deceit and fraud. The ninth count does not set out the elements which would form a basis for a legal action, as outlined in Anderson v. Modica, 4 N.J. 383 (1950), and Schoharie County Cooperative Dairies, Inc. v. Eisenstein, 22 N.J. Super. 503 (App. Div. 1952). While equitable fraud may be pleaded where there is absent any intent to deceive, the only relief that may be sought is equitable relief, such as rescission or reformation of an agreement, and not monetary damages only. Plaintiff seeks recovery in the maximum amount of $50,000  nothing else.
We note, in passing, that detailed examination of defendants' affidavits, none of whose allegations are controverted, reveals that there were no representations made by any defendant. The allegations contained in the ninth count have no firmer foundation than assumptions made by plaintiff with respect to the contents of the invitation to bid and the specifications, and these contain no representations whatsoever.

VII.
In light of our determination of the several points urged by plaintiff on the appeal, we find it unnecessary to consider defendants' argument that plaintiff, by requesting and accepting final payment under the contract, is barred from bringing this action on the principle of accord and satisfaction. Nor need we deal with their suggestion that there was waiver or estoppel.
The summary judgment is affirmed.